Can the attorneys on the first case approach the podium and identify yourselves for the record please. Good morning. Good morning. Thomas Long-Gadge for the public. Good morning Mr. Lind, you can proceed. May it please the court, counsel, as I indicated, Thomas Long-Gadge for the plaintiff, Michelle Brennell Dunkle. The issue before you this morning, your honors, is pretty straightforward. It involves the scope of a duty owed by an attorney to a client who comes into his office asking for assistance. As I assume you've read the facts, I'll try to be brief. Tell me, where's the attorney-client relationship here? The attorney-client relationship at the onset is with the person walking in the door who presents a situation to the client and asking for help. So initially it's Mr. Lind and Ms. Brennell Dunkle. Obviously as the matter becomes reviewed by Mr. Lind, a decision is made as to what the scope of the representation would be. And in this instance, he chose to limit his representation to the defense of Michelle in that chancery proceeding where one of her siblings is alleging breaches of her duty as trustee of the Did he have a right to do that, to limit it? He has a right to limit it, but he also has a right to, not a right, excuse me, an obligation to the person sitting in front of him seeking legal counsel to advise her of her options in a manner to facilitate what she's trying to accomplish. That's what the main case we're going to be talking about, I think, is Keith. But you do concede that the scope of the representation was limited to Michelle as trustee and not Michelle personally? Yes, all the indications are, once... I mean, you're not saying there's a question of fact. I mean, they put forth an affidavit, they put forth a retainer agreement, they put forth a withdrawal. You're not saying there's any question of fact? No, no, no. What my concern is, is a little bit before that. What the duty is to a person walking into an office seeking counsel. And while it can be limited, I think Keith clearly says, you can't just say, all I'm talking about is this, and I've got blinders and plugs in my ears, and everything else you're presenting me with. But in Keith, it was the same client who could be suing for workers' comp, same human being, but also the same client, in the same capacity, could be suing for workers' comp or filing a personal injury case or a products liability case. Here, it's the same human being, of course, it's Michelle, but she's wearing two hats. Exactly. And that's why it's incumbent on the attorney to sort out the two hats and make sure both hats get coverage. Or at least she's aware of the... But why? Why does he have to ensure that both hats get covered if he agrees to just cover one of the hats? Because, as Keith says, even though you're limiting it, you have a duty to volunteer opinions to facilitate the goals of the client. You're saying that the opinion in this case should have been her bringing a counterclaim against the plaintiff in her individual capacity? That's where you're saying he failed? He didn't advise her on that? What I believe he should have done, when she walked in, he looks at the complaint that she presumably had in front of him from Chancery, or he knew what was going on, which clearly says there's recovery sought against Michelle as trustee. And also, unquestionably, there's recovery sought for her personally, out of her pocket, not in her capacity as trustee. They were seeking to have her pay money into, I guess it would be the estate, and follow through the trust. Seeing that, from Mr. Lenz's view, he would appear for her in that case, which he did, and leave that counterclaim unhandled. He can't do that. You've got to say, hey, you've got a problem here. They're coming after you as a trustee. They're also coming after you individually. You've got to tell her that. And that was never responded to, the individual allegations against her? I'm not sure what happened in the litigation, but if you take their position that we only represented her as trustee, and couldn't represent her in her personal capacity, how could Mr. Lenz defend her? In his own view, he couldn't. But wouldn't that be, aren't you putting, she's trustee, and she has claims against that trust, so how can you represent the trust in solely the trust, and also represent her in allegations against the trust? Isn't there a conflict there? There may be. I debate that, as you say, in our briefs. But I'm not saying we had to represent her in her personal capacity. He had to tell her, hey, they're coming after you for personal money. You may want to talk to somebody. Or, hey, they're coming after you. Maybe you have some defenses to that. But doesn't he have an obligation to the trust, as well, then? His obligation, once he says he's limiting the scope, yes. So wouldn't it be an abrogation of that duty of representing the trust to say, hey, you've got a claim here against the trust? You don't have to say it. I'm not saying you have to say you've got to win or go do this with X, Y, or Z. It's, hey, you've got an issue here. Go talk to somebody. Go see another lawyer. There's something here that – Would you agree that they could not advocate that position for her individually against the trust? Well – Once they represent the trust. When you say advocate, do you mean go into court and push it or file a complaint for her or take any steps to assist her? Yes, I agree. Okay. My focus is on, you've got to tell her – What his obligation was. You've got to protect her. There's another issue. You should look at this. You know, what we've got is a woman, and there's no discovery, so I can't say for certain. I'm guessing she's not legally sophisticated. She doesn't know what all this means. She goes to a lawyer with a complaint where, in one part, seeking money out of her pocket. The lawyer has got to talk to her about that. Can't just say, well, I'm not looking at that. I'm just looking at this. Whatever happens, happens there. There's something more the lawyer has to do when a client comes in. Even if it's against the client's interest? It's not against her interest. It's against the trust's interest if she's making assertions against the trust. Well, if they're valid claims, it's not against the interest of the trust. It's a legitimate debt or claim. When you argue, that's going to – as I said, I'm not saying he's got to file a complaint. I'm not saying he's got to lay it all out in a chapter or verse, whatever options are. He sees an issue. He should express the thought that, hey, I can't help you on this. I can't help you. You have a case that would support your theory. Well, I have some trial court experience where it's gone that way against me. But, no, I don't have a case beyond Keith where they've delineated what counsel or advice an attorney has to give beyond the scope of limitation. Because, as your honor said, Keith talks about count, claim, and PI case, same person, same thing. But this is the same thing, too. You know, it's the handling of the defense of claims. But in Keith, the client's capacity didn't change. It was just this person. And in this case, there's Michelle, the trustee, and Michelle, the potential claimant. I mean, they're the same human being, but they do have two different roles. Well, with all due respect, what we're talking about is a relationship initially when a person, be whatever capacity, walks in to talk to a lawyer about a problem. The problem here is, hey, I'm getting sued. Help me. That may be a paraphrase of what happened here, but I'm reasonably certain that's how it occurred. Would it be enough if the lawyer said to the client, you understand, don't you, that I'm only representing you as the trustee? I'm not looking at any claims about you individually. I'm not dealing with anything about you individually. I'm here just defending this lawsuit, which only sues you and your client. It doesn't. That's the problem here. It's not suing her just as a trustee. It's captioned that way, but the relief is against her individually. I would agree with what you have to say, but I'll say they're coming after you for money. I'm not handling that. Think about it. Talk to a lawyer. You're on your own on that. Something along those lines, I believe, is the place. You're saying Michelle was a party defendant? No, she was named as trustee. Well, she was a party defendant as trustee. Otherwise a party defendant? But if you look at the criminal record 199-201, 204-205, they're seeking her to pay to the estate rent for the time she stayed in her mother's home. That's not a trustee debt. I'm sorry. I keep going back to this. The complaint has to be answered, right? So does our attorney who's representing the trust not answer those allegations? And doesn't somebody catch it somewhere along the line saying this hasn't been answered? I have to confess I got into this case yesterday. I don't know how that underlying complaint was filed. Somebody threw you a bomb and said, no, I don't know. I've been doing that long enough. But I don't want to misrepresent what Mr. Lynn did in the underlying case when I personally haven't looked at it. An attorney who's in the courtroom who may know that, that I could speak to. Well, I'll say that. I'll ask him again. But to me, it's kind of implicit that they didn't do anything with it, Mr. Lynn didn't do anything with it, because he's saying it would have been a conflict. But to touch that, I forget what the subparagraphs were, but on those pages, if he dealt with them at all, then by his own admission he engaged in a conflict of interest. So I'm presuming he didn't actively defend those. Is the complaint saying that Michelle as trustee was wasting the money? Or that Michelle just was wasting it? The complaint says she finished her duty in the handling of the trust. I think in distributing some of the assets between herself, the plaintiff in that case who she was estranged from, and another sibling. They also had a claim for, I think it's called redistribution and remarshaling of assets. Again, what exactly those are, I'm not certain. But it sounds like things were distributed, and this agreed sibling wanted them all brought back into the trust and distributed more adequately. There was injunctive relief. And then also, in those counts, it was a prayer for Ms. Prado herself to pay rent. And that's the problem. That's her. That's not her actions as a trustee. It's her as an individual living with the trust's home, rent-free, according to the estranged sister. And that's where the rub is here. That's in the complaint, the accounts that Mr. Lynch should have known about. He says he can't handle her on her own. And if he was in that position, he's got to tell her, hey, they're coming after her individually. There's things you should talk to a lawyer. And one of the things she could do is this probate claim as an offset. She claimed that she's entitled to monies for caring for her mother. If she's entitled to those, that would be an offset to any rent, arguably. That's how that claim could have been defended. But, again, my understanding is it wasn't because Mr. Lynch says he can't help her individually. And that's the problem that goes back to the beginning. Once this dichotomy of hats is apparent and Mr. Lynch determines he can't handle both, he's still got to say, hey, there's this other issue that you should talk about with someone else. Let me ask you again about this. You're saying that in the prayer for relief in the underlying complaint, they are praying for Michelle to pay back money? Yes. I think I actually have it here. Are they asking for Michelle as trustee? Well, she couldn't pay it as trustee. It's for her own use. If she's living in the house, she can't use trust assets to pay for it. That would be a problem in its own self. Here it is. 199. It's on C199, paragraph 61, subparagraph G. Require defendant, who's listed as a trustee, to pay to trust number two as amended the fair market rental value of her residency at the rental property for the period of time defendant had resided rent-free at the property. That's not a debt of a trustee. That's a debt of Michelle Prano individually. That's in there. That's beyond reworking what happened in the trust. That's an affirmative step to have her pay money. And with that in the equation. Was any action taken on that? Was there a motion to dismiss file? Again, I don't know what was done in that case. But my focus is earlier on, the case was dismissed because of a lack of duty by Judge Gombolinski. I think the presence of him, regardless of what ultimately was done, the issue is what should he have advised her when she walked in the door seeking legal counsel? And that's at least some advice or admonishment, information, you know, cautionary language. Hey, there's this other element of this case that I'm not handling. And he didn't do it. And if someone handled it, a rational upshot of that would have been a probate claim to kind of work as a set-off or if nothing else, a negotiating ploy on a personal claim against her. That's what I'm saying. Not that she hadn't yet had a representative. There's a piece of the puzzle in that Chancery case that Mr. Lind said he wasn't going to handle and didn't even mention he wasn't going to handle and that she'd seek counsel from someone else for it. That's the gist of my argument. I think I've used my 15. Thank you, Mr. Lind. Mr. Nelligan? Enlighten us. Thank you, Your Honor. May it please the court, counsel, again, Brendan Nelligan on behalf of the defendant appellants, Carrie A. Lind and Carrie A. Lind, PC. What Mr. Long has argued for this court to find, he's asked for a rule which would require an attorney, my clients, to serve two ministers with directly adverse interests. Mr. Nelligan, what happened below? Was that allegation that she owed rent to the trust ever answered in the complaint? Well, that's not in the record, but the issue, I think, is so I can't really say one word. It's a mystery. What the issue and what's kind of eluded, I think on purpose, is there is this legal distinction. As Justice Ellis has recognized and I think the courts recognize, there are two different people here. And what the case law, the law-abstaining case law says is that while there are two different people, someone who's acting in their individual capacity, they're a legally distinct person from their acting in a representative capacity. So the assertion that somehow the plaintiff's interests individually were implicated by this rent issue, it's simply belied by the pleadings in the underlying case because she was never a party. She was never named. Individually. Named individually. Correct. And even as counsel conceded, the allegation sought that recovery against her in her capacity as trustee. Defendant threw out. So there were no allegations against her as an individual? So why would the attorney ever know or have reason to know that there were allegations against her as an individual? Is that your argument? Correct. There weren't any allegations against her as an individual. So this is what the argument below was, and below in the circuit court, was that the plaintiffs, that the claims in the trust lawsuit were effectively against the plaintiff individually. But it can seem she wasn't a party. She wasn't named. She was never served individually. And the case law is a good example. So you didn't have to separate all that out and figure out, well, no, she can't be seeking a recovery from the trustee for this. You could only be seeking it from the individual, and then based on that. Well, frankly, that would be her attorney's job to figure that out. It's not the job of the attorney for the trust. And the cases that we've cited, they were never responded to. They were never responded to in the circuit court, and they've not been responded to before this court. This is the Flanagan case and the Cleveland v. Cleveland case, which point out these distinctions, the distinction between someone acting in their individual capacity and in their representative capacity. What those cases say is when a person is serving their representative capacity, the individual is a stranger to the litigation. It's as if they had another name. What about this part of the complaint where they were asking Michelle to pay back rents? Again, they weren't asking Michelle. They were asking the trustee to pay back rent because the only defendant in the case was the trustee. So the plain language of the allegation itself was against the trustee. The fact that they were seeking the remedy against the wrong party, it doesn't change the fact that who the party defendant was in the case. And the point is, and what the case has said, is you can't, if they were to obtain a judgment against that, if they were to obtain a judgment on those claims, they would not have been able to enforce them against the individual. What's wrong with telling Michelle, hey, there's another Michelle in the room who's not my client right now, and she's Michelle individually, so maybe you should get a lawyer for anything that might affect you in that context. Well, I don't think there's anything wrong with that in the abstract, Your Honor, but that's not part of the allegations of this complaint. The argument we heard today about Michelle coming into the room and sitting down with her and there should have been an advisor advising her of the concern about those individual allegations, that's not in the complaint. In the actual amended complaint, the breach of the duty is identified on, this is on C-171 on the count of my record. The breach, the purpose of that is that the defendants were negligent and failed to exercise a reasonable degree of care and skill in the following ways. They failed to timely advise plaintiff of the existence of and recommend the making of claim against the estate of Louise J. Crono, pursuant to 755 ISCS 5-18-1.1. That's the custodial care claim. That's the failure. The second failure is they failed to advise the plaintiff individually for the time period for making such a claim, so the statute of limitations on that claim. And the failure to advise her that making such a claim would result in a superior settlement. So the allegations there, that's the duty there that my client's breached and that's the duty that is directly contrary to the duties that my client owed to the trust and the trustee and the beneficiaries of the trust. That's the direct adverse conflict between the two different individuals. So you're saying this whole argument about Keith. Keith was argued in the circuit court. It was. At least in the orals. It was. But you're saying that this whole kind of duty to notify your client of other things that might be going on in their legal world that aren't directly what you're doing for them. This duty to notify was not alleged in the amendment complaint. Is that your point? The amendment complaint allows the duty to notify of the custodial care claim. That's the only breach of duty that was alleged. Right. I understand your argument on that. But Keith goes beyond that and says, maybe the facts are a little different, but I thought the gist of the argument from the plaintiff was, okay, he didn't have to give me legal advice as an individual, but he had to tell me to get legal advice. He had to tell me you should probably have a lawyer for your individual claims. That was not argued in the circuit court. The circuit court was he had a duty to advise her about this claim, this custodial care claim, this conflict claim or the claim that essentially would result in a breach of my client's affirmative duties, the duty of loyalty to his actual clients. Now, it's interesting. What happened in the circuit court was the plaintiffs conceded that there was no representation between my clients and the plaintiff in this case, namely Michelle Panadopoul, individual. They said there's no representation, but there's kind of a duty, notwithstanding the fact that there was no representation. And, again, Mr. Rowan conceded that before a lawyer before he said there was no attorney-client relationship between the defendants and the plaintiff in this case, Michelle Panadopoul, individual. Well, that's the crux of the issue because if there's no attorney-client relationship, there's no duty. And what happened in Keith, Keith is obviously distinguishable on several different levels. Keith did not, as Rowan noted, did not implicate this distinction, this legal distinction of two separate individuals. There was only one individual, and, therefore, there would be no adversity, there would be no conflict in advising the individual about claims they might assert, the third-party claims in that case. So there was only one individual. Therefore, the conflict issue isn't implicated. But, in addition, in Keith, what they did have was there were two separate claims. There were two separate injuries in Keith. One was in January of 1991, and one injury was in April of 1993. And what the court in Keith said was with respect to the first injury for which there was an attorney-client relationship, there was this duty, this duty to go beyond the limits of the representation in the workers' comp matter to advise them of this other claim. But what the court also found was that with respect to the second injury, there was no attorney-client relationship with respect to that injury, and, therefore, there was no duty, and, therefore, it affirmed the dismissal of that help. Now, what we have here, rather than two injuries, we have two individuals. There's Michele Parabonco, trustee, and there's Michele Parabonco, individual. It's unspeakable that Michele Parabonco, trustee, had an attorney-client relationship, and, therefore, there were duties that my client owed to Michele Parabonco, trustee, and those duties also extended out of the trust as well as the beneficiaries of the trust. What there is not, and what has been conceded, both in the circuit court and out here, there was no attorney-client relationship between Michele Parabonco, individual. In the absence of an attorney-client relationship, there can't be a duty, and, for that reason, the circuit court was entirely correct in its judgment. The circuit court really did cut to the issue where he said, you know, there's, you're suggesting that if an attorney goes around and tells a bunch of people that they have claims against the estate, that that's not a breach of the duty to the estate, and that was the assertion in the circuit court. The circuit court correctly rejected that here. So, for those reasons, the circuit court is, in fact, was entirely correct in its judgment, and that judgment should be affirmed. Unless there's any other questions, I'm happy to...  ...toward the rest of my time. Mr. Ron? I just want to clear up one thing, or a couple things, really. First is this statement that Ms. Prano individually was not a court-appointed defendant in the case. In the underlying case. True, she's not in the caption. I think we've all been around long enough to see sloppy pleading. They asked for relief against her individually. I'm not a trusted estate attorney, but I can't imagine a scenario whereby a trustee could use trust assets to pay her own rent, and that's what they're looking for. So... But if they tried to enforce that judgment, if they won that complaint and tried to enforce it against Michelle individually, they wouldn't be able to, right? Arguably, no. But why should it get to that point, Your Honor, when there's a judgment against Ms. Prano on a claim no one's representing her on, but no one told her about it? Because it wouldn't be against her. It would be against the trustee. But how... I guess I'm missing your point in the sense... I see your point about ultimately paying it, but the idea is Mr. Lynn was consulted early on in the proceeding. This is in a pleading. I think it's an improper pleading. I don't think it's preproper. It should have sought danger individually, because the relief is individual. Would that have transpired if the case had been handled properly? Maybe it was addressed. Again, as Your Honor said, it's a mystery. And I apologize. I have no further answers for you on the mysteries of what happened in your case. But the focus should be on what does an attorney owe a person walking into his office for? Whose perspective are we judging what an attorney's duty is? Should we look at it as an attorney saying, well, she's a trustee, she's a beneficiary, she's individual, and I'm only picking and choosing there and giving my advice in a particular category? Or you look at it from the client perspective, which I think, in my humble estimation, is the appropriate way. What does the client expect from a lawyer and what is the client entitled to when they walk in and say, I've got a problem. Here's my problem. I'm getting sued. What do I do? What's my options? What's the situation? In this case, it appears Mr. Luth focused on one aspect, the trustee, even though there's a personal claim, be it collectible or not, to the pleading issues, without even mentioning the possibility of a claim for monies from her. Ultimately, it could transmute into that. But in that pleading, there's no way that pleading could be read as seeking trust assets. But you're not just suggesting that he should have said to her, maybe you should see a lawyer about your problem. That's not what you pleaded, it sounds like. Well, we said advice. Maybe we were aggressive in our pleading, but we say fail to advise her. He didn't advise her of her own personal situation, and he did not advise her to look into it. He did not advise her there's a conflict of him representing her on all the issues in this case. Nothing. The record's devoid of anything that said that. It's just, okay, I represent you, and off they go without anyone thinking about, without Mr. Luth thinking about telling her what her individual situation is. She's an individual sitting there. We're lawyers. We see trustees and all the other legal realities of status. She's a person who's looking for counsel. She should get counsel. Kevin, here's the problem. You know, it appears from the record and from all the evidence in this case that the defendant's retaining agreement pertained only in her capacity as a trustee. Certainly, Judge, and that brings us back to Keefe. Just because a written retainer limits to one aspect, an attorney is required to provide opinions to, I think, as reasonably apparent other issues, and what does that mean? Well, that's something that you're saying that there's no case law that really says that. There's no case law that I'm aware of because beyond Keefe delineates what kind of advice, we'll call them collateral related matters, is required and under what circumstances. A lawyer has always had the ability to limit his or her representation. I agree wholeheartedly, Judge. I'm not saying you should have represented her. He can limit it, no questions asked. But in the context of initial consultation and retention with a client, if there's other areas they can explore, like Keefe, workers' comp claim, PI claim. Workers' comp lawyers generally don't handle PI, but under Keefe they're supposed to talk to the clients about possible. They're supposed to know if there's a third-party action. That's what they're supposed to know. They're supposed to advise the client of potential third-party claims. That's right. Here, I think the underlying thought of Keefe, that an attorney should fully apprise his client of the situation they're facing and their possible options extends to the point of something like this, where there's claims in one legal capacity against you that I can handle, but there's other capacity claims out here and other issues that could affect you in this penumbra of facts that I can't. You've got to tell her about there's other issues, and maybe you should do something about it. I think you're not an indicate. I don't know if that was theoretically, but the idea of, hey, tell her it's out there. She'd get a lawyer. She could handle that claim either in a chancery manner or start working with the probate end to perfect her claim there that could be of use in defending this claim forever. So you want to add another burden to the lawyers. They have the burdens. They have to appear before judges. They've got to deal with their wives and their family, and they've got to deal with the ARDC. Now we've got a new burden. Most of my work is defending lawyers. I don't want to burden my brethren anymore, but I'm looking at the outset advising a person walking in off the street what the situation is, what I can do for you, and, oh, by the way, there's other things here that maybe you should talk to another lawyer with to protect yourself. And I think that should have happened here. What didn't happen here, and that's a breach of a duty owed to that person, was seeking Mr. Flynn's counsel. Thank you. And for those reasons, I respectfully request that Judge Komolensky's ruling be reversed in the case of your benefit, just for the record. Court will take the matter under advisement and issue an order as soon as possible. Thank you both.